Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| JUAN CARLOS SALGADO MARTÍNEZ | | *CERTIORARI* Procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo |
|---|---|---|
| Recurrido | KLCE202401022 | |
| v. | | Civil Núm.: GB2024CV00149 |
| IVONNE OQUENDO SÁNCHEZ, ET AL | | |
| Peticionarios | | Sobre: Cobro de Dinero - Ordinario |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 17 de octubre de 2024.

Comparece ante nos la señora Ivonne Oquendo Sánchez ("señora Oquendo") y La Exce Trading, LLC (en conjunto, "los Peticionarios") mediante un *Recurso de Certiorari sobre Determinación Interlocutoria en Torno a Solicitud de Desestimación por Falta de Jurisdicción sobre la Materia*. Nos solicita que revoquemos la *Resolución* dictada el 22 de agosto de 2024 y se notificada el 23 de agosto del mismo año por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro primario" o "foro *a quo*"). Mediante el aludido dictamen, el foro primario denegó una moción de desestimación presenta por los Peticionarios.

Por los fundamentos que expondremos a continuación, **denegamos** la expedición de *certiorari*.

### **I.**

El 21 de febrero de 2024, el señor Juan Carlos Salgado Martínez ("señor Salgado" o "Recurrido") presentó una *Demanda* sobre incumplimiento de contrato, cobro de dinero y daños contra

los Peticionarios.[1] Mediante esta, alegó que el 4 de noviembre de 2022, el señor Salgado suscribió con la señora Oquendo un Acuerdo de Beneficio ("Acuerdo"). Adujo que, en dicho Acuerdo, se pactó que el Recurrido haría una transferencia de cincuenta mil dólares ($50,000.00) a la señora Oquendo y esta, en un período de un año, le devolvería al señor Salgado el doble de dicha cantidad, entiéndase, cien mil dólares ($100,000.00). Sostuvo que ese mismo día, el 4 de noviembre de 2022, el señor Salgado transfirió cincuenta y seis mil dólares ($56,000.00) como pago inicial. Indicó que dicha cantidad estaba garantizada por La Exce Trading, LLC. Reiteró que la intención para transferir dicha cantidad era recibir el doble de esta, entiéndase, ciento doce mil dólares ($112,000.00) al 4 de noviembre de 2023, en virtud del Acuerdo.

De igual manera, el señor Salgado esbozó que en ningún momento se le informó de algún riesgo de perder el dinero invertido y que en todo momento cumplió con sus obligaciones. No obstante, señaló que, llegado el 4 de noviembre de 2023, la señora Oquendo, prorrogó unilateralmente el pago por tres (3) meses adicionales. El Recurrido explicó que, llegada la fecha prorrogada, entiéndase, el 4 de febrero de 2024, la señora Oquendo no entregó los cincuenta y seis mil dólares ($56,000.00) transferidos por el señor Salgado como parte de la inversión inicial ni los cincuenta y seis mil dólares ($56,000.00) correspondiente al Acuerdo.

Asimismo, el Recurrente adujo que intentó comunicarse con la señora Oquendo para recibir los correspondientes pagos. Expresó que no empece a ello, estos intentos no rindieron frutos. Argumentó que los Peticionarios habían incurrido en un esquema de fraude mediante el cual llevaron a cabo representaciones falsas, haciendo promesas de dinero garantizado. Por todo lo anterior, el Recurrido

---

[1] Véase, Apéndice del Recurso, págs. 11-20.

solicitó el pago de la suma liquida, vencida y exigible de cincuenta y seis mil dólares ($56,000.00) en concepto de pago inicial garantizado por el Acuerdo; cincuenta y seis mil dólares ($56,000.00) en concepto del beneficio acordado que sería obtenido el 4 de noviembre de 2023, más los intereses, cargos por mora, el pago de gastos y costas de honorarios de abogado.

En respuesta, el 20 de junio de 2024, los Peticionarios presentaron *Contestación a Demanda.*[2] Mediante esta, negaron ciertas alegaciones y levantaron sus correspondientes defensas afirmativas. Igualmente, solicitaron que se desestimara el pleito por falta de jurisdicción sobre las personas y sobre la materia.

Tras varios asuntos procesales que son incensarios detallar, el 7 de julio de 2024, los Peticionarios presentaron *Moción en Cumplimiento de Orden, Solicitud de Vista Argumentativa y a Otros Efectos.*[3] En lo pertinente, esgrimieron que la presente controversia no estaba madura, que no se habían agotado los remedios administrativos establecidos y, además, existía una limitación de campo ocupado. Por ello, solicitaron que el Recurrido expresara, en corte abierta, las razones por las cuales no se debía desestimar su causa de acción. El 22 de julio de 2024, el foro primario emitió una *Orden* mediante la cual expresó lo siguiente: "[s]olicitud de desestimación, si alguna debe ser presentada de conformidad con la Regla 10.2 de Procedimiento Civil. Subsane o aclare en el término de 15 días".[4]

Así pues, el 11 de agosto de 2024, los Peticionarios presentaron *Moción en Cumplimiento de Orden del 23 de julio del 2024 [41] Concediendo hasta el 12 de agosto de 2024 para Presentar al Honorable Tribunal nuestra Moción Solicitando Desestimación.*[5] En

---

[2] *Íd.*, págs. 30-34.
[3] *Íd.*, págs. 36-39.
[4] *Íd.*, págs. 41.
[5] *Íd.*, págs. 6-9.

esta, arguyeron que el mercado de intangibles no respaldados por moneda local o internacional, no era materia en la cual los tribunales de Puerto Rico tenían jurisdicción. Por ende, solicitó la desestimación del pleito por falta de jurisdicción tanto de persona como de materia.

Por su parte, el 15 de agosto de 2024, el Recurrido presentó una *Oposición a Solicitud de Desestimación*.[6] En síntesis, planteó que en la moción de desestimación instada por los Peticionarios no proveyeron disposición legal que sustentara sus alegaciones. Reiteró que los tribunales de Puerto Rico son tribunales de jurisdicción general por lo cual, salvo que exista disposición legal que lo prive de ello, el Poder Judicial tiene jurisdicción sobre cualquier caso o controversia.

Atendido los escritos de las partes, el 22 de agosto de 2024, notificada el 23 de agosto del mismo año, el foro *a quo* emitió *Resolución*.[7] Mediante esta, declaró *No Ha Lugar* la solicitud de desestimación instada por los Peticionarios, toda vez que de dicha solicitud no se desprendía disposición legal que respaldara el argumento de que el foro *a quo* carecía de jurisdicción sobre la materia.

Inconforme, el 23 de septiembre de 2023, los Peticionarios comparecieron ante esta *Curia* y formularon los siguientes señalamientos de error.

> Primer Error: Erró el Honorable Tribunal de Primera Instancia al interpretar que la carencia o falta de jurisdicción debe surgir única y expresamente de una disposición [sic] legal y no del silencio de regulación sobre la materia en nuestro ordenamiento.

> Segundo Error: Erró el Honorable Tribunal de Primera Instancia en fundamentar su resolución declarando "No Ha Lugar" la solicitud de destimación [sic] que nos ocupa en su impresión de las alegaciones fácticas de la demanda sin realizar el análisis correspondiente a cuándo los hechos alegados en la misma otorgan la jurisdicción primaria otro foro o entidad.

---

[6] *Íd.*, págs. 43-52.
[7] *Íd.*, págs. 2-4.

El 25 de septiembre de 2024, esta *Curia* emitió una *Resolución* en la que se le concedió un término de diez (10) días al Recurrido para que mostrara causa por la cual no debíamos expedir el auto de *certiorari* y revocar la determinación recurrida. Oportunamente, el 7 de octubre de 2024, el Recurrido compareció mediante *Moción en Cumplimiento de Orden y en Oposición a que se Expida el Auto de Certiorari.* En esencia, sostuvo que los Peticionarios no hicieron referencia a ninguna disposición legal que diera lugar a la desestimación del pleito.

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.

### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023) citando a *McNeil Healthcare v. Mun. de Las Piedras I*, 206 DPR 391, 403 (2021).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual

manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra,* págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de

Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

**III.**

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, los Peticionarios no ha demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

**IV.**

Por los fundamentos expuestos, **denegamos** la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA.  LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones